In an action to recover damages for wrongful death, etc., the defendant appeals from an order of the Supreme Court, Queens County (Price, J.), dated August 21, 2002, which denied its motion for summary judgment dismissing the complaint.
Ordered that the order is reversed, on the law, with costs, the motion is granted, and the complaint is dismissed.
On February 17, 1999, the plaintiffs decedent committed suicide by consuming a quantity of prescription and nonprescription drugs and tying a plastic bag over his head until he was asphyxiated. A number of manufacturers’ bottles of prescription drugs with their lot numbers on them, including, inter alia, the drug Ultram, were found in the decedent’s office at the time of his suicide. Thereafter, the plaintiff commenced this action alleging, in effect, that the defendant illegally supplied the decedent with prescription drugs in manufacturers’ bottles in exchange for cash payments and credit card charges.
After depositions and some discovery were completed, the defendant moved for summary judgment. In support thereof, it submitted the deposition testimony of Roger Chin, the defendant’s principal as well as its sole pharmacist, to the effect that he never sold any prescription drugs to the decedent without a prescription, the decedent never asked for prescription drugs without a prescription, that stock bottles are generally not permitted to be given directly to consumers, and that he had cashed checks for the defendant as he did for a few other customers. The defendant’s prescription record for the decedent also shows that the last time it dispensed Ultram to the decedent was December 21, 1996. Chin also testified that during the period February 1998 through February 1999 the defendant purchased its prescription drugs exclusively through Neuman Distributors.
*353 In response to this prima facie showing of entitlement to summary judgment by the defendant, the plaintiff merely pointed to the manufacturers’ bottles of prescription drugs found in the decedent’s office, together with the facts that the defendant had cashed $5,400 in checks made out to cash for the decedent and the decedent had charged over $4,200 on his credit card there. The plaintiff asserted that the cashing of the checks pointed to the defendant illegally supplying the decedent with the prescription drugs, which contributed to his suicide. The plaintiff also asserted that due to the defendant’s failure to maintain a proper inventory record, it had been unable to trace the bottles from the manufacturer to the defendant.
Chin’s testimony was sufficient to make out the defendant’s prima facie case that it did not illegally supply the decedent with prescription drugs in exchange for cash payments. In response to this showing, all the plaintiff showed was speculative assertions that the defendant supplied the drugs to the plaintiffs decedent based on the fact that the defendant cashed checks for the plaintiffs’ decedent and that drug manufacturer’s stock bottles were found near the decedent’s body after his death. Further, although the plaintiff had the relevant lot number on the aforementioned manufacturers’ bottles, she failed to show any link between the manufacturer’s vials found at the scene of the decedent’s death and either the defendant or the defendant’s exclusive distributor.
As the plaintiff raised only mere speculation that the defendant illegally supplied the plaintiffs decedent with prescription drugs, the motion should have been granted (see generally Mazzone v Lazaroff, 305 AD2d 558 [2003], lv denied 100 NY2d 512 [2003]; Klor v American Airlines, 305 AD2d 550 [2003]; Smith v Johnson Prods. Co., 95 AD2d 675 [1983]). Ritter, J.E, Florio, S. Miller and Luciano, JJ., concur.